No. 03-773

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 184

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

MICHAEL CHRISTOPHER HILL,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2001-195,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

       For Respondent:

          Honorable Mike McGrath, Attorney General; Jim Wheelis and
Anthony C. Johnstone, Assistant Attorneys General; Helena, Montana

          Fred Van Valkenburg, County Attorney; Jennifer Johnson, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  April 7, 2004

Decided:  July 13, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Michael Christopher Hill appeals the order filed on August 21, 2002, by the Fourth Judicial District Court, Missoula County, denying his motion to suppress evidence and the subsequent denial of his motion to reconsider filed on December 13, 2002. We affirm the orders of the District Court.

¶2 Hill raises two issues on appeal:

¶3 1. Did the District Court err in denying defendant's motion to suppress on the grounds that he was unlawfully seized?

¶4 2. Did the District Court err in denying defendant's motion to suppress on the grounds that the trunk of the car that the defendant was driving and the bags found there were illegally searched?

BACKGROUND

¶5 On April 18, 2001, Montana Highway Patrol Officer Roman Zylawy stopped Michael Hill for driving 92 miles per hour on Interstate 90. Zylawy informed Hill of the reason for the stop, and Hill apologized, explaining that his cruise control was sticking. Zylawy responded that 92 miles per hour was too fast for a warning and that he would need to collect a forty dollar bond from Hill. Hill handed over his driver's license and told Zylawy that the car was rented. When Zylawy asked for the rental paperwork, Hill "looked for a long time" but could not find it. Zylawy went to his patrol car to run checks on the license and registration. From these, Zylawy learned that the car was registered to Avis, a rental car company, but that the car was not recorded as stolen. Zylawy wrote out the citation, returned

2

to Hill, and explained to him that the forty dollar bond was not an admission of guilt. He elaborated that if Hill wanted to contest the ticket he would have to come back to Montana; otherwise he could simply forfeit the bond and it would be a "done deal." Zylawy handed Hill's license back to him "and said that we're done."

¶6 Having noticed that Hill had no bags or clothes in the car, Zylawy then initiated small talk conversation. Zylawy asked where Hill was going and where his traveling clothes were. Hill said that he was coming from Tacoma to see a friend in Missoula and that he did not need any clothes because he was going to stay only one night. Hill added that he may return that night because his friend did not know he was coming--it was a surprise--and he was unable to contact him with his cell phone. Zylawy asked if Hill was carrying "anything illegal in the car--illegal guns, money, or drugs." Hill said "No." Zylawy requested permission to search the car, and, at first, Hill gave it. Returning to his patrol car, Zylawy obtained a consent form and called another officer to the scene. Officer Hader responded.

¶7 As Zylawy was going over the terms of the consent form, Hill "started to balk at the idea." Hill said that the car was not his but Avis's and that his friend had rented it. He continued, "I mean my friend rented the car, and what if she put something in there I don't know about." Hill then refused to allow the trunk of the car to be searched, but he permitted Zylawy to inspect the cabin. Zylawy observed only a cell phone and a DVD player in the car's passenger area.

¶8 When Zylawy asked Hill where he had gotten the car, Hill replied that a friend, whose name he did not know, had rented it. Hill told Zylawy that he had planned on flying to

Missoula from Spokane but that the flights were full, so he had needed a car. When the officers inquired again about the rental paperwork for the car, Hill replied that he thought his friend had left the rental agreement in the car, but that he was again unable to find it. The rental agreement was subsequently located in the glove box where Hill had looked.

¶9 When Zylawy returned to his patrol car to check on the car's origin, he learned that it had been rented from the Avis office at the Spokane International Airport. Hader then used his cell phone to call the Avis office at the Spokane airport. He learned from Avis that the car was two days overdue and that Hill was not an authorized driver on the rental agreement. An Avis representative requested that the officers impound the car and consented to a search of the vehicle. Standing outside the vehicle, Hill requested that he be able to retrieve his personal belongings. Hill pointed out the things that were his and pulled them out of the car, not touching the trunk or its contents. Hader then asked Hill if there was anything in the trunk of the vehicle, and Hill replied, "No."

¶10 Hill was placed in the back of the patrol car and was held on suspicion of unauthorized use of a vehicle. The officers then opened the trunk of the car and found two duffel bags. Before opening the bags, they asked Hill if they were his. He responded that they were not. In one duffel bag the officers found shoes, clothes, a shaving kit, and a cell phone charger that matched Hill's cell phone. In the other bag they discovered six and a half pounds of marijuana and half a pound of hashish.

¶11 Hill was charged with two counts of criminal possession of dangerous drugs with intent to distribute and with speeding. The speeding charge was later dismissed. Hill

4

initially pled not guilty to the drug charges. He filed a motion to suppress the evidence obtained from the car, but the motion was denied. Hill filed a motion to reconsider the motion to suppress, which was also denied. Hill then entered into a plea agreement with the county attorney and withdrew his not guilty plea. Accepting the plea agreement, the District Court found Hill guilty of one count of criminal possession of dangerous drugs with intent to distribute and dismissed the second count. The District Court sentenced him to five years incarceration, suspended with conditions. Hill appeals.

## STANDARD OF REVIEW

¶12 The standard of review of a trial court's grant of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Henderson*, 1998 MT 233, ¶ 9, 291 Mont. 77, ¶ 9, 966 P.2d 137, ¶ 9. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *Henderson*, ¶ 9.

## DISCUSSION

¶13 *Did the District Court err in denying defendant's motion to suppress on the grounds that he was unlawfully seized?*

¶14 Hill does not challenge the legality of the initial stop for his traffic violation. Rather, he contends that, once Zylawy gave him the citation, the officer had no right to then engage him in small talk and that doing so amounted to an unlawful detention. Hill argues that he was not free to leave.

¶15 We recently considered the identical issue in *State v. Merrill*, 2004 MT 169, 322 Mont. 47, ___ P.3d ___. In *Merrill*, a sheriff's deputy stopped the defendant for making an illegal lane change. After the deputy told the defendant that he would only give her a warning, he told her she was free to go and stepped away from the vehicle. Noticing that the defendant was unusually nervous, the deputy re-engaged her in conversation. *Merrill,* ¶ 4. The deputy requested to speak to her, then to search her car, and finally to search her person. Each time the defendant freely consented. The deputy discovered methamphetamine on the defendant's person. *Merrill,* ¶ 4. The defendant moved to suppress the evidence, arguing that she was unlawfully seized, which the District Court denied. We affirmed the District Court's determination that a reasonable person would have felt free to leave at any time after the conclusion of the traffic stop and that the defendant and the deputy were in engaged in a voluntary exchange when the illegal drugs were found in the defendant's possession. *Merrill,* ¶ 20.

¶16 Within the meaning of both the Fourth Amendment of the United States Constitution and Article II, Section 11, of the Montana Constitution, a person is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Merrill*, ¶ 10.

¶17 Once Zylawy gave back Hill's license and indicated the matter was done, the investigatory stop concluded. A reasonable person under these circumstances would have believed he was free to leave, and therefore, the subsequent conversation which developed between the officers and Hill was a voluntary exchange. Only when the officers discovered

6

that Hill was not an authorized driver of the vehicle did they detain him. Thus, Hill was not

unlawfully seized during his pre-detention conversation with the officers.

¶18 *Did the District Court err in denying defendant's motion to suppress on the grounds that the trunk of the car that the defendant was driving and the bags found there were illegally searched?*

¶19 The Fourth Amendment to the United States Constitution protects citizens against

unreasonable searches and seizures. The search and seizure provision of the Montana

Constitution is set forth in Article II, Section 11:

> **Searches and seizures.** The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

The right to be free of unreasonable searches and seizures is augmented by Montana's right

of privacy articulated in Article II, Section 10. Section 10 reads:

> **Right of privacy.** The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

"When analyzing search and seizure questions that specially implicate the right of privacy,"

Sections 10 and 11 are read together. *State v. Boyer*, 2002 MT 33, ¶ 19, 308 Mont. 276,

¶ 19, 42 P.3d 771, ¶ 19. This conjunction leads us to examine the legality of a search or a

seizure by determining whether there has been an unlawful governmental intrusion into one's

privacy. *See Boyer*, ¶ 20.

¶20 Hill asserts that he had a reasonable expectation of privacy both in the trunk of the car

and in the duffel bags found there. He emphasizes that he (1) was the sole operator of the

7

vehicle, (2) had control over the vehicle and its contents, (3) had not abandoned the vehicle, (4) had not waived his right to exclude others from it, and (5) refused to consent to the search of the vehicle.

¶21　Hill further argues that the District Court mistakenly concluded that one's expectation of privacy is tied to his property interest in the object to be searched. Relying on our holding in *State v. Isom* (1982), 196 Mont. 330, 641 P.2d 417, Hill argues that his statement disavowing ownership of the duffel bags cannot deprive him of his standing to present a Fourth Amendment challenge to the search of them because the statement was made while he was in custody. Moreover, he contends that Avis did not have actual authority to consent to the search because it did not have possession of the car at the time of the search.

¶22　The State replies that Hill's claim of a privacy interest in the vehicle fails for several reasons: (1) he was not authorized to drive the car; (2) he was not a party to the rental agreement; (3) the car was overdue; (4) he had no relation to the car's owner; and (5) he failed to present evidence that he had any relation to the car's renter. The State dismisses Hill's argument that the District Court improperly emphasized his lack of property interest in the vehicle as a misconstrual of the court's reasoning.

¶23　The State also argues that Hill had no privacy interest in the contents of the trunk because he voluntarily disclaimed knowledge and ownership of anything in it. The State, citing § 46-5-103(1)(a), MCA, asserts that Hill's disclaimer prohibits a court from finding the search illegal. The statute reads:

8

**When search and seizure not illegal.**

(1) A search and seizure, whether with or without a warrant, may not be held to be illegal if:

(a) the defendant has disclaimed any right to or interest in the place or object searched or the evidence, contraband, or person seized . . . .

Moreover, the State maintains that Avis's consent to search the vehicle extended to all of the contents of it.

¶24 To determine whether there has been an unlawful governmental intrusion into one's privacy in search and seizure situations, we look at the following factors: (1) whether the person has an actual expectation of privacy; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the State's intrusion. *Boyer*, ¶ 20. Where no reasonable expectation of privacy exists, there is neither a "search" nor a "seizure" within the contemplation of Article II, Section 10, of the Montana Constitution. *Boyer*, ¶ 20.

*Actual Expectation of Privacy*

¶25 Considering Hill's status as an unauthorized driver, combined with his failure to demonstrate any relationship with an authorized user, it is doubtful that he had an actual or subjective expectation of privacy in the vehicle's trunk and its contents. We stated in *State v. Elison*, 2000 MT 288, ¶ 49, 302 Mont. 228, ¶ 49, 14 P.3d 456, ¶ 49, that "[p]lacing an object beyond the purview of the public in a place from which the person has the right to exclude others evidences an actual or subjective expectation of privacy." Hill, because he was an unauthorized driver, lacked the "right to exclude others" from the trunk of the car, suggesting a corresponding lack of a subjective expectation of privacy therein. However,

9

assuming, arguendo, that Hill did have a subjective expectation, we conclude that the expectation was not objectively reasonable.

*Reasonableness of the Expectation of Privacy*

¶26    Prior cases have outlined factors to consider when determining whether society is willing to recognize as objectively reasonable one's subjective expectation of privacy.  In *State v. Williams* (1994), 268 Mont. 428, 887 P.2d 1171 (overruled on other grounds), officers were executing an arrest warrant on a suspect in a motel room.  During the course of their arrest, an officer looking for a pen opened a drawer and observed illegal drugs.  The defendant argued that, though he had not rented the room and had not planned on staying there overnight, the officer violated his objectively reasonable expectation of privacy in the motel room and sought to exclude the drug evidence.  This Court held that where the defendant "does not articulate any reason, other than his mere presence in the motel room, why he had a legitimate expectation of privacy in the desk drawer in that room," his argument is not compelling.  *Williams*, 268 Mont. at 432, 887 P.2d at 1173-74.

¶27    In *State v. McCarthy* (1993), 258 Mont. 51, 852 P.2d 111, the defendant asserted that he had an expectation of privacy in an automobile in which he had been a passenger during an accident.  Concluding that the defendant had no reasonable expectation of privacy, we noted that one of the relevant factors in our determination was that the defendant did not own the car.  *McCarthy*, 258 Mont. at 55, 852 P.2d at 113.

¶28    While Hill exercised more control over the rental car than the defendant in *Williams* did over the motel room, there is little else to establish the objective reasonableness of his

10

privacy expectation. Like the defendant in *McCarthy*, Hill did not own the vehicle. Further, Hill had not rented the car, and he had no permission to use the car. The car was two days overdue to Avis. Hill failed to establish any relationship whatsoever to the last authorized renter of the car. And importantly, Hill voluntarily relinquished any interest in the vehicle's trunk and its contents.

¶29 This case stands in contrast to prior instances where we have found an expectation of privacy to be objectively reasonable. In *State v. Tackitt*, 2003 MT 81, 315 Mont. 59, 67 P.3d 295, we considered whether an expectation of privacy had been breached where a drug-sniffing canine was employed without a warrant and detected drugs in the trunk of the defendant's car parked next to his residence. In concluding that the defendant had an expectation of privacy which had been breached, we noted that the defendant owned the vehicle and maintained control thereof, that he had the right to exclude others from its enclosed areas, and that none of his actions indicate he surrendered this control. *Tackitt*, ¶¶ 6, 21.

¶30 In *State v. Elison*, a police officer conducted a warrantless search of the defendant's car, including the area underneath and behind the seats. We held that a person may have a reasonable expectation of privacy "when [that] person takes precautions to place items behind or underneath seats, in trunks or glove boxes, or uses other methods of ensuring that those items may not be accessed and viewed without permission." *Elison*, ¶ 51.

¶31 Hill lacked the right to exclude others that the defendant in *Tackitt* possessed. Though he exercised control of the vehicle, he did so in an unlawful manner. Moreover, Hill

11

voluntarily relinquished any control he exercised over the contents of the trunk by twice overtly denying knowledge or ownership of anything there and once implicitly doing so. *Elison* is similarly distinguishable. While Hill apparently took pains to ensure that the duffel bags were hidden from view, he lacked the authority that the defendant in *Elison* had to either grant or withhold permission to see them since he was not in lawful control of the vehicle. In addition, once he voluntarily waived control over the duffel bags themselves, he implicitly granted permission for them to be accessed.

¶32    Our conclusion that one does not have a reasonable expectation of privacy in an unlawfully possessed rental car is supported by decisions from the federal circuit courts. The Eighth Circuit Court of Appeals, in *United States v. Muhammad* (8th Cir. 1995), 58 F.3d 353, found no expectation of privacy in a car in the absence of evidence of consent by the lawful owner or lessee for the defendant to use the car. Similarly, the Fourth Circuit Court of Appeals found no expectation of privacy in a rental car when the driver was not authorized by the rental agreement, even though he may have had permission from the lawful renter. *United States v. Wellons* (4th Cir. 1994), 32 F.3d 117. The *Wellons* court elaborated that one "who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile." *Wellons*, 32 F.3d at 119 (citation omitted). The Sixth Circuit Court of Appeals, in a case where it *did* find an expectation of privacy, acknowledged "that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, and therefore does not have standing to contest the legality of a search of the vehicle." *United States v.*

12

*Smith* (6th Cir. 2001), 263 F.3d 571, 586. The *Smith* court found an exception to the general rule in part because the driver had reserved the vehicle in his name and with his credit card, and had permission from the authorized driver, who was his wife, to use the car. *Smith*, 263 F.3d at 586. None of these factors are present here.

¶33 As we have concluded, the conversation which ensued following Zylawy's giving of the traffic citation to Hill, and his indication that they were done, constituted a voluntary exchange. During that exchange, Hill first consented to a search, then partially revoked his consent, then twice disavowed any interest in the contents of the trunk. Additionally, having requested permission to retrieve his possessions from the car, Hill did so and left the bags untouched, implicitly denying ownership of them. Though Hill raises a Fifth Amendment issue arising from his third, in-custody affirmation that the duffel bags were not his, his two earlier disclaimers are determinative here, and we need not reach his Fifth Amendment issue. Pursuant to Article II, Section 10, of the Montana Constitution and § 46-5-103(1)(a), MCA, we conclude that society cannot accept as objectively reasonable one's expectation of privacy in a car he illegally possessed. Nor is it objectively reasonable to accord to the defendant an expectation of privacy in two duffel bags found in that car after he twice voluntarily disclaimed any knowledge of them.

*Nature of the Intrusion*

¶34 Nothing in the record indicates that the nature of the State's intrusion into the vehicle's trunk and its contents was unreasonable. Though the officers did not have a warrant, Avis, the owner of the car, consented to the search of it. A "[k]nowing and

13

voluntary consent by a citizen to a search is a recognized exception to the warrant requirement." *State v. Olson*, 2002 MT 211, ¶ 20, 311 Mont. 270, ¶ 20, 55 P.3d 935, ¶ 20.

¶35 Hill seeks to limit Avis's consent to a search of the trunk only, excluding the bags found within. However, where the police, at the owner's request, take possession of a vehicle after allowing the unauthorized driver to retrieve his possessions from it, the vehicle's owner is the only party remaining to consent to a search of the contents. The trunk's contents were effectively surrendered to Avis's control by Hill, making Avis's permission to search the vehicle sufficient to permit a full search of the items found within. *See State v. Parker*, 1998 MT 6, ¶ 22, 287 Mont. 151, ¶ 22, 953 P.2d 692, ¶ 22 (car owner's consent to search a vehicle properly extended to a fanny pack found within the vehicle when all three adult occupants of the car disclaimed ownership of it).

## CONCLUSION

¶36 We agree with the District Court that Hill was not unlawfully seized. In addition, we find Hill had no reasonable expectation of privacy in the vehicle and its contents. Therefore, there was no unlawful governmental intrusion into Hill's privacy. The District Court's findings of fact are not clearly erroneous, and its conclusions of law are correct.

¶37 Affirmed.

/S/ JIM RICE

14

We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART