JUSTICE LEAPHART
dissenting.
¶39 Since I find the Court’s analysis both internally incoherent and inconsistent with our privacy jurisprudence, I dissent.
¶40 The Court’s reliance upon our decision in State v. Hill, 2004 MT 184, 322 Mont. 165, 94 P.3d 752, is misplaced for several reasons, and is fairly easily disposed of. Maj. Op., ¶ 13. We based our conclusion that Hill lacked the right to exclude others from the trunk of the rental car on the fact that he was driving the car without authorization. Hill, ¶ 25. As we reasoned later in that opinion:
While Hill apparently took pains to ensure that the duffel bags were hidden from view, he lacked the authority that the defendant in Elison had to either grant or withhold permission to see them since he was not in lawful control of the vehicle. [State v. Elison, 2000 MT 288, 302 Mont. 228, 14 P.3d 456.]
Hill, ¶ 31; see also Hill, ¶ 32 (concluding that “one does not have a reasonable expectation of privacy in an unlawfully possessed rental car’). We found Hill’s lack of the right to exclude significant because it “suggested] a corresponding lack of a subjective expectation of privacy” in his duffel bags. Hill, ¶ 25.
¶41 Such is not the present case. While the citizen may not expect as much privacy in the garbage that she sets out for collection as, say, the defendants in Siegal did in their compound, see Maj. Op., ¶¶ 11-12, this is not to say that she expects none. Indeed, much of society’s growing awareness of, and determination to combat, identity theft stems precisely from our expectation that our garbage will remain private, and from the outrage that a stranger’s violation thereof naturally inspires. See State v. Scheetz (1997), 286 Mont. 41, 48, 950 P.2d 722, 726 (desire to protect one’s privacy lies “at the foundation [of] the constitutional safeguards that exist to protect” it).
¶42 Our further rejection of Hill’s claim to a reasonable expectation of privacy in his duffel bags is accurately related by the Court. Maj. Op., ¶ 13. However, the more closely one examines this aspect of that decision as well, the less favorable to the Opinion it proves to be. As the Court notes, we found Hill’s expectation of privacy unreasonable in part because he ‘Voluntarily relinquished any control he exercised over the contents of the trunk.” Maj. Op., ¶ 13 (quoting Hill, ¶ 31). How did he do this? ‘[B]y twice overtly denying knowledge or ownership of anything [in the trunk] and once implicitly doing so,” Hill, ¶ 31. While withdrawing his original grant of permission to the *22 officers to search the trunk, Hill said, T mean my friend rented the car, and what if she put something in there I don’t know about[?]” Hill, ¶ 7. And when the officers, by now having opened the trunk, asked Hill if the duffel bags they had found were his, “[h]e responded that they were not.” Hill, ¶ 10.
¶43 This, of course, is not what we do when we leave our household refuse for collection. The act itself links the garbage ineluctably to us, as does the latter’s appearance on our property in our garbage can, and this connection continues at least until our trash is commingled with that of others. This distinction, unappreciated by the Court, is a crucial one, because by disclaiming any connection to the marijuana-filled duffel bags, Hill naturally disclaimed all privacy interest in them, as well. Leaving garbage for collection, by contrast, constitutes at most proprietary renunciation, not absolute disavowal.
¶44 Perhaps most damaging to the Court’s reliance on Hill, however, is the simple fact that the police obtained permission from the owner of the rental car-fche rental car company-to search the trunk. “A knowing and voluntary consent by a citizen [here, the company] to a search is a recognized exception to the warrant requirement.” Hill, ¶ 34 (citation and internal quotation marks omitted). Unlike Hill, there is no question of consent in the present case. Maj. Op., ¶ 3.
¶45 In the Court’s view, however, consent to search the garbage would not enter into the present case, anyway, because there was no owner from whom to obtain consent-Pelvit abandoned his refuse (so the argument runs) by setting it out for collection. Maj. Op., ¶ 14. This is legal error, pure and simple. We have defined “abandonment” as “the giving up of a thing absolutely, without reference to any particular person or purpose.” Moore v. Sherman (1916), 52 Mont. 542, 546, 159 P. 966, 967 (emphasis added). When we haul our household refuse out for collection, however, we have both a person and a purpose in mind. We intend nothing more nor less than that the garbage collector will dispose of it for us at the designated location. ‘By definition, there cannot be an abandonment to a particular person[.]” 1 C.J.S. Abandonment §3b (citing Moore; Norman v. Corbley (1905), 32 Mont. 195, 79 P. 1059).
¶46 The Court then compounds its error with this vague, sweeping, and entirely unsupported assertion: “Voluntary relinquishment of one’s interest in an item or one’s control over that item is akin to the legal concept of abandonment.” Maj. Op., ¶ 14 (emphasis added). The passage serves as the means by which to nudge the practice of leaving one’s garbage for collection into the category of “abandonment,” a characterization which I have already demonstrated to be legally *23 erroneous. It is useful, however, to examine the statement further. ¶47 The Court has already conceded that Pelvit relinquished only Immediate control” of his garbage. Maj. Op., ¶ 13. Remembering and retrieving items which we have uninten-tionally or rashly discarded is a fairly common action, and one which we could hardly perform if we enjoyed no control over our garbage whatsoever. Therefore, it must be the cession of “immediate control” that is akin (whatever that may mean) to the legal concept of abandonment.
¶48 Now consider the common practice of parking one’s car in the driveway and leaving it there to enter one’s home. This surely constitutes a relinquishment of “immediate control” over the vehicle. On the Court’s view, then, this amounts to abandonment, and should result in a loss of all privacy protection in the car. Maj Op., ¶ 14 ([“w]e have stated that when a person intentionally abandons his property, that person’s expectation of privacy with regard to that property is abandoned as well”). Does it in fact do so? No. State v. Tackitt, 2003 MT 81, 315 Mont. 59, 67 P.3d 295 (privacy protection extends to automobile parked at residence). Or consider mailing a letter. Does placing the letter in the mailbox for collection by the postman disqualify it for privacy protection? No, not even under the United States Constitution, a document which affords but meager privacy protection in comparison with our State Constitution. California v. Greenwood (1988), 486 U.S. 35, 55, 108 S.Ct. 1625, 1637, 100 L.Ed.2d 30, 46 (Brennan, J., dissenting).
¶49 Even if Pelvit abandoned his garbage, moreover, this would not necessarily mean that he abandoned all privacy interest therein, the Court’s assertion to the contrary notwithstanding. Maj. Op., ¶ 14. Not even the United States Constitution equates proprietary abandonment with abandonment of privacy interests. As Justice White, the author of the Greenwood decision, wrote in his dissent from the earlier California v. Rooney.
[T]he premise that property interests control the right of officials to search and seize has been discredited. Oliver v. United States, 466 U.S. 170, 183, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984); Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967); Warden v. Hayden, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967). The primary object of the Fourth Amendment is to protect privacy, not property, and the question in this case, as the Court of Appeal recognized, is not whether Rooney had abandoned his interest in the property-law sense, but whether he retained a subjective expectation of privacy in his trash bag that society accepts as objectively reasonable. *24 O’Connor v. Ortega, 480 U.S. 709, 715, 107 S.Ct. 1492, _, 94 L.Ed.2d 714 (1987); California v. Ciraolo, 476 U.S. 207, 211, 212, 106 S.Ct. 1809, 1811, 1812, 90 L.Ed.2d 210 (1986); Oliver v. United States, supra, 466 U.S., at 177, 104 S.Ct., at 1740; Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); Katz v. United States, supra, 389 U.S., at 361, 88 S.Ct., at 516 (Harlan, J., concurring).
California v. Rooney (1987), 483 U.S. 307, 320, 107 S.Ct. 2852, 2859, 97 L.Ed.2d 258, 268, (White, J., dissenting).
¶50 The Court’s position is a throwback to the old abandonment-andcurtilage analysis that Katz superseded almost four decades ago. 1 Wayne R. LaFave, Search and Seizure §2.6(c) at 689-90 [hereinafter LaFave]; Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The fact that we now base our three-pronged test for impermissible governmental intrusions upon Katz only highlights the absurdity of the Court’s stance. See State v. Bullock (1995), 272 Mont. 361, 375, 901 P.2d 61, 70. Nor is it too late to strike Hamilton’s ill-conceived statement from our case law; it functions in that opinion as dictum, not holding, as the Court tacitly acknowledges (“stated,” not ‘held”), and seems an unsuitable candidate for promotion, to put it mildly. LaFave, § 2.6(c) at 695 (proprietary abandonment equa lling privacy abandonment a ‘broad and unsound concept”).
¶51 While it is true that we have held Article II, Section 10, of our Constitution not to protect whatever privacy interest the citizen might claim in objects which he has knowingly exposed to the public, Maj. Op., ¶ 14, see, e.g., State v. Griffin, 2004 MT 331, ¶ 25, 324 Mont. 143, ¶ 25, 102 P.3d 1206, ¶ 25, it is also beside the point, for Pelvit did not knowingly expose his garbage to public view. He put it into opaque garbage bags, put the bags into garbage cans, and closed the cans. See Maj. Op., ¶ 3. To imply, as the Court does, that Pelvit knowingly exposed his garbage to the public at large is thus to credit Montana’s citizenry with X-ray vision.
¶52 Though perhaps not to the extent of imputing super-human powers to our citizens, the Court similarly overstates its case when it claims that garbage cans ‘tr]outinely ... are knocked over” and their contents “strewn across streets and alleyways.” Our cities’ thoroughfares are not, I am happy to report, awash in garbage. In any event, as the Vermont Supreme Court wrote in State v. Morris:
[T]he mere possibility that unwelcome animals or persons might rummage through one’s garbage bags does not negate the expectation of privacy in the contents of those bags any more than the possibility of a burglary or break-in negates an expectation of *25 privacy in one’s home or car, or the possibility that an operator or party-line caller will listen in on a telephone conversation negates an expectation of privacy in the contents of the conversation, or the possibility that a cleaning person or house guest will exceed the scope of a visit negates an expectation of privacy in a hotel room or home.
State v. Morris (Vt. 1996), 680 A.2d 90, 99, 62 A.L.R.5th 729, 743; see also LaFave §2.6(c) at 692 (presence of risks to privacy attendant upon customary disposal of garbage “hardly means that the government is constitutionally unconstrained in adding to those risks”). As we stated in State v. Hamilton, 2003 MT 71, 314 Mont. 507, 67 P.3d 871, “[t]he reality that certain people lack respect for the property of another is no reason to diminish the expectation of privacy we protect so jealously in Montana.” Hamilton, ¶ 30.
¶53 It is therefore odd to find the Court requiring that, before officers can seize and search garbage, they must have an “articulable individualized suspicion that a crime is being committed” in the interests of balancing the State’s interest in conducting a legitimate investigatory search against the public’s expectation that, ‘if they place their garbage for collection as the law requires, curbside chaos will not ensue.” Maj. Op. ¶ 19. When the Court has spent the better part of its opinion attempting to show that Pelvit did not have a reasonable expectation of privacy in his garbage, it is internally inconsistent for the Court to continue characterizing this intrusion as a seizure and search and, on that basis, to impose a requirement of “articulable individualized suspicion.” If, as the Court posits, Pelvit had no reasonable expectation of privacy in the garbage, then there was neither a seizure nor search of the garbage and no legal constraints are constitutionally required. Either Pelvit had an expectation of privacy or he did not. I would conclude that he did.
¶54 I dissent.
CHIEF JUSTICE GRAY joins in the foregoing dissent of JUSTICE LEAPHART.