J-S41010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL MILLER, | |
| Appellee | No. 2767 EDA 2014 |

Appeal from the Order Entered August 20, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004869-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 13, 2016**

The Commonwealth, as the appellant, appeals from the trial court's August 20, 2014 order granting Michael Miller's motion to quash the charges of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, and criminal conspiracy. After careful review, we vacate the court's order and remand for trial.

Miller was charged with the above-stated crimes after the vehicle he was driving, with his wife as a passenger, was stopped by police officers and heroin was discovered inside. Miller and his wife, as co-defendants, proceeded to a preliminary hearing on April 25, 2014, after which both defendants were held for trial on all charges. Thereafter, Miller filed a

_____

[*] Former Justice specially assigned to the Superior Court.

pretrial motion to quash the charges pending against him, and a hearing on that motion was conducted on August 20, 2014. At the conclusion thereof, the trial court granted Miller's motion to quash.

The Commonwealth filed a timely notice of appeal. It also filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, despite that the trial court did not order the filing of such a statement. No Rule 1925(a) opinion was issued by the court, however, as the judge who presided over the August 20, 2014 hearing was no longer on the bench in Philadelphia County. On appeal, the Commonwealth presents one question for our review: "Did the lower court err in ruling that the evidence was insufficient for a *prima facie* case?" Commonwealth's Brief at 4.

Preliminarily, we note that Miller's motion to quash was "the equivalent in Philadelphia practice of a pre-trial writ of *habeas corpus*." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1111 (Pa. Super. 2016). This Court recently clarified the appropriate standard of reviewing a court's decision to grant a pre-trial *habeas* motion, stating:

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. **Commonwealth v. James**, 863 A.2d 1179, 1182 (Pa. Super. 2004) (*en banc*). In **Commonwealth v. Karetny**, 583 Pa. 514, 880 A.2d 505 (2005), our Supreme Court found that this Court erred in applying an abuse of discretion standard in considering a pre-trial *habeas* matter to determine whether the Commonwealth had provided *prima facie* evidence. The **Karetny** Court opined, "the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Id.** at 513, 880 A.2d 505;

- 2 -

> *see also Commonwealth v. Huggins*, 575 Pa. 395, 836 A.2d 862, 865 (2003) ("The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law[.]"). The High Court in *Karetny* continued, "[i]ndeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." *Karetny, supra* at 513, 880 A.2d 505. Hence, we are not bound by the legal determinations of the trial court. To the extent prior cases from this Court have set forth that we evaluate the decision to grant a pre-trial *habeas corpus* motion under an abuse of discretion standard, our Supreme Court has rejected that view. *See id.*

*Id.* at 1111-12.

> This Court in *Dantzler* also explained:

> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Id.* at 1112 (internal citations omitted).

In this case, the Commonwealth presented the following evidence at the preliminary hearing. Officer Fred Repetsky testified that on March 15, 2014, he and his partner conducted a traffic stop of a white Cadillac based on the vehicle's "brake light being out…." N.T. Preliminary Hearing, 4/25/14, at 5. The officer and his partner approached the vehicle and spoke to Miller, who was sitting in the driver's seat, and a woman, later determined to be Miller's wife, who was sitting in the passenger seat. *Id.* Officer Repetsky stated that he asked Miller's wife from where the two were coming,

while his partner asked the same of Miller. *Id.* Miller and his wife gave different answers. *Id.* The officers then asked the two "where they were headed." *Id.* Officer Repetsky stated that Miller and his wife "appeared to be looking at each other, trying to gauge answers and build answers off of each other. At that point [the officers] decided to separate them." *Id.*

Miller was removed from the vehicle and "placed in the patrol car." *Id.* at 5-6. Officer Repetesky stated that as he was walking Miller to the patrol car, "[he] asked [Miller] if there were any guns, knifes [*sic*], hand grenades [or] any weapons, anything [the officers] needed to know about in the vehicle." *Id.* at 6. The officer testified that Miller stated there were needles in the car, at which point Officer Repetsky relayed that information to his partner. *Id.* Officer Repetsky stated that his partner then asked Miller's wife if there was anything dangerous in the vehicle and, according to Officer Repetsky,

> [a]t that time, [Miller's wife] reached down in between her legs and removed a cellophane packet and placed it on the dash board. In that cellophane packet was clear[] blue glassine inserts, which are consistent with packaged heroin sold in the area.
>
> There was a large amount. It was approximately a four inch by three inch block. She placed it on the dashboard. She did that as I was coming up from the rear of the car. My partner alerted me to the narcotics that she placed on the dashboard. At that point I asked the female was there anything else that we needed to know about in the vehicle that could hurt us. She reached down again in between her legs from the floorboard and placed a second rack of heroin on the dashboard. It was about the same size, about four by three, but it was twice as thick.

- 4 -

*Id.* at 6-7.

On cross-examination, Officer Repetsky was asked more specifically about where the drugs were located in the vehicle, and the officer replied that Miller's wife's "open purse was on the floorboard of the vehicle" and it "appeared to [him]" that the wife took the heroin out of her purse. *Id.* at 12. However, the officer stated that "[w]here she reached down, [he] could not see exactly where her hand was[] [because] her leg was in the way[,]" but he did observe that "her purse was in between her legs on the floor of the vehicle. *Id.* After observing the narcotics, the officers placed Miller and his wife under arrest and "held the vehicle for a search warrant." *Id.* at 7, 13.

Officer Andrew Schafer also took the stand at the preliminary hearing and testified that he executed the search warrant on Miller's vehicle and found two cell phones and $1,067 in a wallet belonging to Miller. *Id.* at 17. Officer Schafer also testified that the "two racks of heroin" seized from the vehicle contained a total of 60 bundles, broken down into 800 packets. *Id.* at 18. The parties then stipulated that if called to the stand, "an expert … would testify that those drugs were possessed with the intent to deliver." *Id.* at 20.

At the *habeas* hearing on August 20, 2014, the Commonwealth again called Officer Repetesky to the stand. During that proceeding, he testified that Miller's wife "made a lot of statements" to him during the course of the traffic stop. N.T. Hearing, 8/20/14, at 9. Notably, Officer Repetsky testified

that Miller's wife "stated that [Miller] and her [*sic*] had made this, what she referred to as a run, only a few times together. She stated that [Miller] had made [t]his run numerous times over the previous several months." *Id.* Officer Repetsky stated that he interpreted the wife's reference to a 'run' to mean "[a] drug pickup and delivery." *Id.* at 9. On cross-examination, Miller's counsel questioned Officer Repetsky about why he did not testify at the preliminary hearing that Miller's wife made statements in this regard, to which Officer Repetsky replied, "I wasn't asked." *Id.* at 10. At the close of the *habeas* proceeding, the court granted Miller's motion to quash all charges pending against him. When asked to provide a reason for its decision, the court stated, "I didn't believe [Officer Repetsky]." *Id.* at 16. The Commonwealth argued that "credibility is not an issue[,]" the court responded, "[c]redibility is always an issue. … No way with that testimony." *Id.* at 16.

The Commonwealth now argues on appeal that the court's decision to grant Miller's *habeas* motion was erroneously premised on a credibility determination. It further avers that considering the totality of the evidence, including Officer Repetsky's testimony, there was ample proof to constitute a *prima facie* case of PWID, possession of a controlled substance, and conspiracy.

In response, Miller concedes that the court made a credibility determination, but argues that it was not error to do so because Officer Repetsky's testimony was so implausible and inherently unreliable that it

could not possibly have met "the level of even a *prima facie* case." Miller's Brief at 12-13. Alternatively, he contends that even considering the officer's testimony, the evidence was inadequate to demonstrate that he constructively possessed the heroin, or that he conspired with his wife to commit PWID.

We disagree with both of Miller's arguments. First, Officer Repetsky's testimony was not "in conflict with the incontrovertible physical facts[,]" or so "contrary to human experience and laws of nature," such that a fact-finder would be required to reject that testimony. ***Commonwealth v. Santana***, 333 A.2d 876, 878 (Pa. 1975). Moreover, the record does not support Miller's assertion that the trial court "made a *de facto* finding that the testimony was so incredible as to be inherently unreliable, and that a verdict based upon it must amount to no more than surmise or conjecture." Miller's Brief at 17. Rather, the court simply stated that *it* did not believe the officer, which was an impermissible credibility determination at that stage of the proceedings. *See **Commonwealth v. Wojdak***, 466 A.2d 991, 997 (Pa. 1983) (stating that "weight and credibility of the evidence are not factors" to be considered at a *habeas* hearing); ***Commonwealth v. Kohlie***, 811 A.2d 1010, 1014 (Pa. Super. 2002) (stating that the trial court erred at the *habeas* hearing when it made a credibility determination regarding the Commonwealth's evidence, "because credibility is not an issue at pretrial proceedings"). Therefore, we agree with the Commonwealth that the trial

court erred by basing its decision to grant Miller's motion to quash on its conclusion that Officer Repetsky's testimony was not credible.

Additionally, we agree with the Commonwealth that considering the officer's testimony, along with the totality of the other evidence presented at the preliminary hearing and *habeas* proceeding, there was sufficient proof to constitute a *prima facie* case against Miller. First, for Miller's charges of possession of a controlled substance and PWID, the Commonwealth was required to present evidence that Miller constructively possessed the heroin. **See Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa. Super. 1996) ("When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession….").

> Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. [T]wo actors may have joint control and equal access and thus both may constructively possess the contraband. The intent to exercise conscious dominion can be inferred from the totality of the circumstances.

**Commonwealth v. Jones**, 874 A.2d 108, 121 (Pa. Super. 2005) (internal citations and quotation marks omitted).

In addition, for the crime of PWID, the Commonwealth was required to proffer evidence that Miller intended to sell the heroin. **Id.** (citations omitted).

> The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of

packaging, the form of the drug, and the behavior of the defendant.

Thus, possession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption.

*Id.* (citations omitted).

Finally,

[t]o sustain a conviction for criminal conspiracy:

[T]he Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy.

Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 121-22 (internal citations and quotation marks omitted).

Viewing the above-stated evidence, and all reasonable inferences derived therefrom, in a light most favorable to the Commonwealth demonstrates a *prima facie* case for possession of a controlled substance, PWID, and conspiracy. Miller's driving the vehicle, his relationship to his wife, her statements about their previous drug 'runs,' the cash found in Miller's wallet, and the substantial amount of heroin discovered in the vehicle

was adequate, *prima facie* proof that Miller constructively possessed the heroin, intended to sell it, and conspired with his wife to do so. Accordingly, the trial court erred by granting Miller's motion to quash the charges against him, where that decision was premised on an improper credibility determination, and the Commonwealth's evidence was sufficient to prove a *prima facie* case against Miller. Thus, we vacate the court's August 20, 2014 order and remand for trial.

Order vacated. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016