J-S32020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ELDRIDGE ASHLOCK | : | |
| | : | |
| Appellant | : | No. 2742 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 22, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008067-2017

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.*

MEMORANDUM BY KING, J.:         **FILED NOVEMBER 10, 2020**

Appellant, Eldridge Ashlock, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for simple assault and possessing an instrument of crime ("PIC").[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellant and Blyar Oliver are former romantic partners and have a six-year-old son together. Complainant is Ms. Oliver's new boyfriend. On July 28, 2017, Appellant arrived at Complainant and Ms. Oliver's home to pick up his son. Complainant approached Appellant as he sat in his vehicle outside the

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2701(a) and 907(a), respectively.

residence and saw that Appellant had pointed a firearm toward him, holding it out the driver's side window. Appellant told Complainant, "I could kill you right now," and made several comments about Complainant's relationship with Ms. Oliver. Complainant attempted to grab the firearm from Appellant, and it discharged. The bullet struck the driver's side door. A struggle ensued, and Complainant managed to disarm Appellant. During the struggle, Complainant injured his arm. A surveillance camera on Complainant's porch captured part of the altercation.

The Commonwealth filed a criminal complaint against Appellant on July 29, 2017. On October 5, 2017, discovery was marked complete. The court conducted a pretrial conference on October 24, 2017, during which the parties passed discovery. In the initial discovery, the Commonwealth provided the security camera footage from Complainant's residence. The docket entry for October 24th provides, in relevant part: "Defense Request For Continuance Discovery Just Provided[.] DISCOVERY PASSED AT BAR." (Criminal Docket at 3, unpaginated). The court also scheduled the next listing for December 12, 2017.

At the December 12, 2017 pretrial listing, Appellant claimed a narrated video of the incident was posted on Facebook and complained that the Commonwealth failed to provide the Facebook video during discovery. The Commonwealth, however, stated it was unaware of any video footage other than what it had already provided. The docket entry for December 12, 2017,

reads: "Defense Request for Continuance Discovery Incomplete…Additional discovery (video narration from [F]acebook) needed.  Relist on 2/27/18…." (*Id.* at 4).

The docket entry for the pretrial listing on February 27, 2018, reads, in relevant part: "Defense Request For Continuance For Further Investigation…[Appellant] present on bail & served for next listing.  Listed for Final Pre Trial Bring Back: 5/18/2018….  Time Ruled Excludable." (*Id.*).  On May 1, 2018, however, the court entered an order granting a motion for a continuance and scheduling the next court date for July 20, 2018.[2]

On July 20, 2018, the Commonwealth requested a continuance.  The relevant docket entry reads: "Commonwealth Request For Continuance For Further Investigation[.]  LISTED FOR WAIVER TRIAL[.]  CONTINUED FOR FURTHER INVESTIGATION[.]  DEFENSE READY WITH WITNESSES PRESENT[.]  MUST BE TRIED COMMONWEALTH[.]  NCD///: 10/26/18…[.]" (*Id.* at 5).  On October 26, 2018, the Commonwealth requested another continuance because Complainant was attending a funeral.  The docket reads: "Commonwealth Advance Request For Continuance[.]  Complainant attending a funeral.  [Appellant]'s presence excused due to the advance notice.  NCD 1/11/19….  Must be tried Commonwealth.  No further continuances.  … Earliest possible date was 12/7/18 – Attorney unavailable." (*Id.*).

---

[2] The record does not disclose which party requested this continuance.

The Commonwealth requested an additional continuance on January 11, 2019, as the arresting officer was unavailable to testify. The docket reads: "Commonwealth Request For Continuance Police Officer Busy/Unavailable[.] Officer was subpoenaed but promoted to Sergeant so subpoena was not received. Complainant was present. Both sides to subpoena Sergeant for next listing. NCD: 4/1/19…for trial[.]" (*Id.* at 6).

On March 28, 2019, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. In his Rule 600 motion, Appellant asserted the Commonwealth had not exercised due diligence in bringing the case to trial in a timely manner as it had, *inter alia*, (1) requested a continuance on July 20, 2018, when the defense was ready with many witnesses in the courtroom; (2) failed to turn over the narrated Facebook video as requested; and (3) improperly subpoenaed the arresting officer, Sergeant Tyhara Burnett, further delaying trial when the defense was ready to proceed on January 11, 2019.

The court conducted a hearing on the motion on April 1, 2019, which largely focused on the existence of the alleged Facebook video. Concerning the exchange of discovery and when the Commonwealth first became aware of the Facebook video, the following exchange occurred:

> [The Commonwealth]: Still I do not know what other Facebook video could possibly exist and neither does the complaining witness. Discovery was complete on October 3rd. It was E-released. At that first court date counsel didn't see it on E-File or whatnot and it was repassed at the bar. After that —
>
> The Court: Hold on one second, just so I can follow along.

October of '17?

[The Commonwealth]: '17.

The Court: I see 10/24/17 discovery was provided. But it was E-released 10/3.

[The Commonwealth]: It was. And I have a printout of that as well.

The Court: Okay.

[The Commonwealth]: So December is the first time anybody heard about this Facebook video. The information about it was provided from defense to Commonwealth, saying that someone—a friend of [Appellant]'s saw a Facebook video. So we didn't have any information about this.

(N.T. Hearing, 4/1/19, at 8-9). Ultimately, the court denied Appellant's Rule

600 motion. Regarding Appellant's allegation that the Commonwealth failed

to disclose the Facebook video, the court stated:

So in terms of the Commonwealth giving it to you, if…[C]omplainant – so, in other words, if…[C]omplainant wasn't told to keep it, they don't have to keep something on Facebook. I mean, you can delete it or not. Of course, you might want to keep it for obvious reasons. Hey, here's X, Y, and Z happening to me. It's on video. I understand why someone would want to keep that. But at the same time I can't fault the Commonwealth for not keeping something that they didn't know existed.

(*Id.* at 15-16).

Immediately after the court ruled on the Rule 600 motion, Appellant

proceeded to a bench trial. At trial,

Complainant [testified that he] observed [Appellant] pull up in front of the house and was going outside as [Appellant] signaled for Complainant to come over to [Appellant's] dark

- 5 -

green truck. When Complainant approached the driver's side window, he saw that [Appellant] had a gun pointed toward Complainant. Holding the gun at the driver's side window toward Complainant, [Appellant] said, "I could kill you right now." Referring to [Ms.] Oliver, [Appellant] asked Complainant, "You think she loves you? She doesn't love you. She's going to come right back to me. She's going to come right back to me."

Complainant next testified that, "as soon as – he's talking and keeps talking and talking and then I grab the gun. As soon as I grab the gun, I pointed it down so it wouldn't shoot me. So as soon as I pointed it down, he pulled back the trigger, and that's when it shot through the [driver's side] door." "I didn't want him to shoot me," Complainant testified, "So I'm looking at the barrel, and I'm just looking at his finger. And as he's talking to me, you could see him like squeezing it back. And he has a smirk on his face and he's laughing. He said, 'I'm going to kill you.'"

After the gun fired, Complainant and [Appellant] began "tussling" over the gun. Complainant reached inside the car and got the gun away from [Appellant] and threw it onto the porch of the house. Once the gun was away from [Appellant], Complainant called for [Ms.] Oliver to call the police. Complainant next went to sit down on the steps. He told the [c]ourt, "I thought I was shot. I didn't know because my arm, my left arm right here (indicating), everything was like bleeding. So I didn't know where I was shot or anything. I just know that I was bleeding." Complainant later learned that he had not been shot, but had likely cut his hand when glass from the driver's side window shattered when the gun fired.

…Sergeant Tyhara Burnett ("Sergeant Burnett") responded to the scene. She testified that [Appellant] told her that [Complainant] had punched him and taken his gun. Sergeant Burnett observed that [Appellant] had a busted lip. Sergeant Burnett saw several bullet holes and also recalled that [Appellant] had "little cuts" on his hand, but "it wasn't nothing excessive." Observing photos…, [t]he [c]ourt noted that [Complainant] looked "like he got pinched by the slide when it was shot, as if someone was holding [their hand] over the gun."

* * *

> [Ms.] Oliver testified for the Commonwealth as well, materially identical to Complainant's version of events. [Ms.] Oliver had called [Appellant] to come pick up their son because she had a job interview. [Ms.] Oliver could see through the second floor window that Complainant and [Appellant] were speaking at the driver's side car window, and could see [Appellant] had a gun resting on the open window. [Ms.] Oliver went to find her phone to call the police and when she turned back to the window, [Appellant] had the gun raised. As [Ms.] Oliver ran down the stairs, she heard the gun fire. [Ms.] Oliver heard one shot fired. [Ms.] Oliver did not call the police until after she saw that Complainant had successfully disarmed [Appellant]. [Ms.] Oliver testified that [Appellant] never got out of the truck, and the gun was left on the porch. [Ms.] Oliver conceded that [Appellant] had primary custody of their son at the time of the incident, and she filed a petition to modify custody on August 16, 2017.

> [Appellant] testified to a very different sequence of events. [Appellant] stated that Complainant approached his car unsolicited, punched him in the face and then lunged inside the car. [Appellant] stated that Complainant was leaning in the truck from his chest up. [Appellant] testified that with Complainant's entire body weight on top of him, and while suffering continuous punches by Complainant, they wrestled over the gun, which was secured inside a holster on the right side of [Appellant's] pants. [Appellant] testified that he never had his finger on or even near the trigger.

(Trial Court Opinion, filed November 19, 2019, at 1-4).

At the conclusion of trial, the court found Appellant guilty of simple assault and PIC. Appellant filed a post-verdict motion on August 12, 2019, challenging the sufficiency of the evidence, weight of the evidence, and requesting reconsideration of his Rule 600 claim. On August 22, 2019, the court denied the motion and sentenced Appellant to concurrent terms of two

(2) years' reporting probation for each charge. Appellant filed a timely notice of appeal on September 20, 2019. The court ordered Appellant on September 24, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on October 2, 2019.

Appellant raises four issues for our review:

> Was Appellant denied his right to a speedy trial because the Commonwealth was not duly diligent in bringing the case when it caused 369 days of delay?

> Was the evidence insufficient to establish the offense of simple assault because the Commonwealth did not prove the *mens rea* or *actus rea* for this offense?

> Was the evidence insufficient to establish the offense of [PIC] because the Commonwealth did not prove the *mens rea* or *actus rea* for this offense?

> Was the verdict of guilty as to simple assault and [PIC] against the weight of the evidence because the verdict was contrary to uncontroverted facts introduced at trial and shocks one's sense of justice?

(Appellant's Brief at 2).

In his first issue, Appellant argues the court erred in denying his Rule 600 motion where the criminal complaint was filed on July 29, 2017, but trial did not commence until April 1, 2019. Appellant alleges a period of 611 days passed between the filing of the complaint and the commencement of trial, with 369 of those days attributable to Commonwealth delay. Appellant avers the Commonwealth requested three continuances, and "caused the defense to request continuances on two occasions because discovery was just provided or because discovery was not complete." (Appellant's Brief at 11). Appellant

maintains the Commonwealth was not duly diligent in bringing this case to trial and did not put forth a reasonable effort to do so. Appellant concludes this Court should reverse his convictions, vacate his judgment of sentence, and discharge him. We disagree.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." **Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005).

> The proper scope of review…is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> *     *     *
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

Rule 600 provides, in pertinent part:

**Rule 600.  Prompt Trial**

(A)    Commencement of Trial; Time for Trial

*     *     *

(2)        Trial shall commence within the following time periods.

(a)    Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a).  "Rule 600 generally requires the Commonwealth to bring a defendant…to trial within 365 days of the date the complaint was filed."  **Hunt, supra** at 1240.  To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief.  **Id.** at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600."  **Commonwealth v. McNear**, 852 A.2d 401, 406 (Pa.Super. 2004).

It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed.  The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant.  Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.*

In the context of Rule 600, "excludable time" is differentiated from

"excusable delay" as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) **any continuance granted at the request of the defendant or the defendant's attorney**. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Hunt, supra* at 1241 (internal citations and footnote omitted) (emphasis added). *See also Commonwealth v. Burno*, 638 Pa. 264, 313-14, 154 A.3d 764, 793-94 (2017) (explaining excusable delay is not calculated against Commonwealth in Rule 600 analysis, as long as Commonwealth acted with due diligence at all relevant times).

Instantly, the Commonwealth filed the criminal complaint on July 29, 2017. The court held a bench trial on April 1, 2019—611 days after the filing of the criminal complaint. Appellant contends the Commonwealth is responsible for 369 days of this delay where "the Commonwealth requested three delays and caused the defense to request continuances on two occasions because discovery was just provided or discovery was not complete."[3]

_____

[3] In his brief, Appellant fails to specify which defense continuance requests he attributes to the Commonwealth. Appellant's claim is arguably waived on this

(Appellant's Brief at 11). The record, however, belies Appellant's assertion that the Commonwealth "caused" Appellant to request two continuances due to incomplete discovery. Nowhere in the record does the Commonwealth ask, encourage, or require defense counsel to request these continuances. Moreover, the Commonwealth testified at the Rule 600 hearing that discovery was completed and e-released on October 3, 2017, and the docket entries show that discovery was marked complete on October 5, 2017. The record further confirms that the Commonwealth had provided all discovery in its possession on or before the October 24, 2017 pre-trial conference. Contrary to Appellant's assertion, the Commonwealth is not responsible for the **defense** continuance requests on October 24, 2017 and December 12, 2017, where the Commonwealth was unaware of the existence of the alleged narrated Facebook video. **See Hunt, supra**. Without these two continuances included in Appellant's calculation of the 369-day delay Appellant complains was attributable to the Commonwealth,[4] Appellant fails to reach the 365-day mark. Therefore, Appellant's Rule 600 motion filed on March 28, 2019, was

_____

basis. **See Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa.Super. 2006) (stating if deficient brief hinders this Court's ability to address issue on review, we shall consider issue waived). Nevertheless, based on Appellant's references to language in the docket entries stating "discovery was just provided" and "discovery was not complete," Appellant's brief suggests he is complaining about the October 24, 2017 and December 12, 2017 defense continuance requests.

[4] The defense continuance requests on October 24, 2017 and December 12, 2017 resulted in an approximate 126-day delay.

premature, and the court properly denied the motion. **See id.**; Pa.R.Crim.P. 600(A)(2)(a).

In his remaining three issues combined, Appellant argues the evidence was insufficient to establish that Appellant committed simple assault and PIC. Appellant insists Complainant's actions led to the discharge of the gun, as Complainant approached Appellant's vehicle and attempted to take the gun from him. Appellant emphasizes that neither Complainant nor Appellant suffered any gunshot injuries. Appellant contends this evidence is insufficient to establish the *mens rea* for Appellant's negligent discharge of a firearm or Appellant's intent to use the firearm criminally.

Appellant further avers that the verdicts were against the weight of the evidence where the Commonwealth witnesses provided inconsistent testimony and had a motive to lie. Appellant asserts Complainant (1) told police that Appellant came to the door of the residence with the gun, when Appellant actually remained inside his vehicle during the entire confrontation; (2) denied hitting Appellant in the face, even though the arresting officer testified that Appellant had a facial injury; and (3) denied ever meeting Appellant prior to this incident, despite testimony from an employee at Appellant's son's school who stated that Complainant attempted to start a fight with Appellant at a school meeting. Appellant further emphasizes that Ms. Oliver filed for custody of their child after the alleged incident, and incorrectly stated in the custody petition that Appellant had pulled a gun on her during the altercation.

Appellant concludes this Court should reverse his convictions, vacate the judgment of sentence, and/or award him a new trial. We cannot agree.

When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)). Additionally:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has

ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Pennsylvania Crimes Code defines simple assault as:

**§ 2701. Simple Assault**

**(a) Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

\* \* \*

18 Pa.C.S.A § 2701(a). Possessing instruments of crime is defined as:

**§ 907. Possessing instruments of crime**

**(a) Criminal instruments generally.—**A person commits a misdemeanor of the first degree if he possesses

any instrument of crime with intent to employ it criminally.

\*     \*     \*

18 Pa.C.S.A. § 907(a).

Concerning whether the evidence was sufficient to find Appellant guilty

of simple assault and PIC, the court reasoned:

> Here, [Appellant] brandished a loaded firearm and pointed it toward Complainant, which discharged into the driver's side car door, resulting in injury to Complainant. [Appellant]'s language communicated his intent to at least place Complainant in fear of imminent serious bodily injury. [Appellant]'s language together with actually injuring Complainant by discharging his firearm, established that [Appellant] had a minimum *mens rea* of negligence, which is sufficient to find [Appellant] guilty of Simple Assault.
>
> Here, too, [Appellant] brandished a loaded firearm at Complainant, and either intentionally, knowingly, recklessly, or negligently caused it to discharge and injure Complainant. Although [Appellant] has a license to carry, his language and actions together prove that he intended to employ his firearm criminally. Therefore, the evidence was sufficient to find [Appellant] guilty of PIC.

(Trial Court Opinion at 9). Regarding the weight of the evidence, the court

stated:

> Here, the [t]rial [c]ourt found Complainant's version of events more credible, which were corroborated by [Ms.] Oliver's testimony. [Appellant]'s testimony was simply incredible to the [c]ourt. The record is devoid of any reference to show that Complainant is of the extraordinary physical stature necessary for [Appellant]'s version of events to ring true. What is much more credible is that [Appellant] removed the gun from his holster, had his finger on or near the trigger, and then Complainant and [Appellant] were wrestling over the gun when it fired into the driver's side door toward Complainant. As the court observed, Complainant's injury appeared consistent with his

hand being positioned on top of the gun and getting cut by the slide when it fired. Therefore, the weight of the evidence was in favor of [Appellant]'s conviction for PIC and Simple Assault…

(***Id.*** at 8). Viewed in the light most favorable to the Commonwealth as verdict-winner, we agree with the court's analysis that the evidence was sufficient to convict Appellant of simple assault and PIC. ***See*** 18 Pa.C.S.A. §§ 2701(a), 907(a); ***Hansley, supra***. For similar reasons, we will also not disturb the trial court's denial of Appellant's weight of the evidence challenge. ***See Champney, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2020

- 17 -