J-A04037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRELL THOMPSON | : | |
| | : | |
| Appellant | : | No. 1977 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 6, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004708-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 19, 2022**

Terrell Thompson appeals from the judgment of sentence entered following his bench trial convictions for criminal conspiracy, theft by unlawful taking, and receiving stolen property.[1] Thompson challenges the weight of the evidence and the denial of his motion to suppress and his motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600. We affirm.

Thompson and his co-defendant Stephen Purnell[2] were arrested in June 2018 for stealing boxes of flooring and tiles from a residence that was undergoing construction on North Marston Street in Philadelphia. Thompson filed a motion to suppress, arguing his arrest was illegal, the police lacked

_____

[1] 18 Pa.C.S.A. §§ 903, 3921(a), and 3925(a), respectively.

[2] The Commonwealth filed appeals of the orders downgrading Thompson's and Purnell's convictions to third-degree misdemeanors, docketed at No. 1929 EDA 2020 and 1909 EDA 2020. We address those appeals in separate memoranda, filed at their respective dockets.

probable cause to arrest him, he was subject to a stop and frisk on less than reasonable suspicion, and the police conducted a search without a warrant or probable cause. The court held a suppression hearing in April 2019 and denied the motion in June 2019. The trial court summarized the facts from the suppression hearing as follows:

> On June 8, 2018, Sergeant Fran[cis] Uitz . . . was in the 22nd District in the City and County of Philadelphia at approximately 1:50 a.m. He arrived at 1453 Mars[ton] Street in response to flash information provided over police radio for a burglary in progress. [Officer Uitz testified that the call came from a verified source, which means the source is "someone who called into 9-1-1, gave verified information that they called it." N.T., Apr. 29, 2019, at 18.]
>
> The flash further described [three] to [four] males removing items from the house and placing them in a U[-]Haul [van]. In a marked police vehicle and wearing full uniform, Sergeant Uitz approached the address traveling the wrong way on the 1500 block of North Mars[ton] Street. From about 150 feet away, he saw a parked, white U[-]Haul [van] along with [three] males outside the house and one inside the [van]. Sergeant Uitz observed one of the males motion to the others to get in the [van] and then drive away. Sergeant Uitz then activated his lights and sirens and followed the U[-]Haul.
>
> Officer Robert H[ee]ney, also assigned to the 22nd District and on duty at the time, received flash information over the police radio. He observed the U[-]Haul driving away from 1453 Mars[ton] Street. Officer H[ee]ney activated his lights and sirens. The males in the U[-]Haul drove a half a block[,] then made a left turn to cut through an enclosed vacant lot. The driver, Defendant Thompson, exited the U[-]Haul and was handcuffed by Officer H[ee]ney. At the same time, [co-][d]efendant Purnell[] exited the [van] and Officer H[ee]ney pointed a taser at him and instructed him not to move. Detective Timothy Gibson; a police officer assigned to the 22nd [D]istrict at the time of the incident, placed [co-][d]efendant Purnell in handcuffs. All four males[,] including

> Defendant Thompson and [co-][d]efendant Purnell[,] were placed in back of a patrol car.
>
> At this point, Officer H[ee]ney opened the back door of the U[-]Haul [van] and observed flooring and building supplies. He also found a lease agreement on the passenger side of the [van]. The U[-]Haul was not leased to any of [the] four males. After approximately an hour, the owner of the [supplies] arrived on the scene and identified the supplies as belonging to him.

Trial Court Opinion, filed Feb. 11, 2021, at 4 ("1925(a) Op.") (quoting N.T., June 14, 2019, at 2-4).[3] At the hearing, Thompson argued the police arrived at the scene based on an anonymous tip. When the police officer arrived, he saw individuals outside a U-Haul truck, which, Thompson argues, is not illegal. He claimed that when the police arrived, the individuals were in the process of leaving the street and were pulled over when the police officers used their car's siren and lights. N.T., 4/29/19, at 73-75. He argues the police could stop and investigate, but should not have put the men in handcuffs, as they did not even have a complainant when they used handcuffs. *Id.* at 75. The trial court denied the motion finding Thompson lacked a reasonable expectation of privacy in the U-Haul van.

In November 2019, the court conducted a bench trial. The trial court summarized the testimony and evidence as follows:

---

[3] The certified record does not contain the transcript of the June 2019 hearing, where the court made its findings for the suppression motion. However, we have the transcript from the April 29, 2019 hearing, where the court heard evidence and arguments regarding the motion to suppress. The testimony from that hearing supports these findings and the parties do not claim the court incorrectly quoted its findings.

At approximately 1:50 a.m. on June 8, 2018, Sergeant Francis Uitz received a radio call directing him to 1453 North Marston Street in Philadelphia. While traveling in the wrong direction on the 1500 block of North Marston Street, Sergeant Uitz observed a U-Haul van parked next to a property on the corner of Marston Street. Several black males were loading boxes into the back of the van. Sergeant Uitz saw the males look in his direction and then proceed to get into the van and drive southbound on the 1400 block of North Marston Street. Following in his vehicle, Sergeant Uitz activated his lights and sirens and unsuccessfully tried to pull over the van. Approximately 150 to 200 feet later, the van pulled into a lot, and the males began to get out. Sergeant Uitz exited his vehicle with his gun drawn and ordered the males to stop; they complied. During this time, backup officers arrived on location. Sergeant Uitz approached the passenger side and handcuffed two of the males. Backup officers handcuffed the other two males. Officer Uitz saw flooring and other construction materials in the back of the van.

Sergeant Uitz conducted further investigation at 1453 North Marston Street. He observed that the front door had been forced open, and there was damage to the door and doorframe. He also noticed that the back door was open, and there was flooring by the back door entrance that was similar to the flooring inside of the van. Detective Timothy Gibson, then a police officer in the 22nd District, also responded to 1453 North Marston Street. He observed the U-Haul in the lot, and saw Officers Heeney and Grant run toward it. Officer Heeney ran to the driver's side and placed one male up against the van. Detective Gibson handcuffed co-defendant Stephen Purnell ("Purnell").

Officer Robert Heeney responded to the radio call and observed his sergeant's vehicle approximately half a block ahead of him. Officer Heeney saw the U-Haul van pull out of its spot and make a left-hand turn traveling southbound on Marston Street. At that time, Officer Heeney noticed that the lights and sirens on his sergeant's vehicle were activated. Officer Heeney observed the U-Haul continue southbound on Marston Street and then turn left into an abandoned lot. Officer Heeney arrived at the lot approximately two seconds after his sergeant. Next, he saw two males exit from the driver's side of the U-Haul. As they exited, Officer Heeney

ordered them to stand against the U-Haul. Officer Heeney handcuffed [Thompson]. After securing [Thompson] and placing him inside the patrol vehicle, Officer Heeney noticed flooring and tile materials in the back of the U-Haul.

After the police contacted him, Lawrence Resnick reported to 1453 North Marston Street between 2:00 and 2:30 a.m. on June 8, 2018. Mr. Resnick served as the general contractor and realtor for a project at that location. Upon arriving at the residence, Mr. Resnick observed damage to the front and back doors. According to Mr. Resnick, he had last visited the property at approximately 6:00 p.m. on June 7, 2018. At that time, there was no damage to either door. Mr. Resnick testified that he purchased the hardwood floors and tiles found in the van. He further explained that those materials were previously locked inside of the residence.

1925(a) Op. at 2-3 (footnote omitted).

The trial court found him guilty of criminal conspiracy, theft by unlawful taking, and receiving stolen property. It sentenced him to one year of probation. Thompson filed a timely notice of appeal.

Thompson raises the following issues:

1. Whether the weight of the evidence is against [Thompson's] convictions for Criminal Conspiracy (18 Pa.C.S. § 903), Theft by Unlawful Taking (18 Pa.C.S. § 3921(a)) and Receiving Stolen Property (18 Pa.C.S. § 3925(a)).

2. Whether the Court erred in its denial of [Thompson's] Motion to Suppress Physical Evidence[.]

3. Whether the case against [Thompson] should have been dismissed pursuant to Pa.Crim.Pro. Rule 600.

4. The Commonwealth raises the issue of the sufficiency of the evidence as it relates to the gradation of the Theft

offenses in their Appeal docketed above under 1929 EDA 2020.[4]

Thompson's Br. at 7.

Thompson first claims the verdict was against the weight of the evidence. Thompson did not raise a weight challenge before the trial court and therefore waived the issue. Pa.R.Crim.P. 607 (requiring a claim the verdict is against the weight of the evidence to be raised with the trial judge in a motion for a new trial).

Thompson next argues the court erred in denying his motion to suppress the evidence found in the U-Haul van. He claims the stop was based on an anonymous telephone call and the police lacked probable cause based on this call, as there was nothing inherently criminal about loading items into a U-Haul van. He also claims that even if the officers had probable cause to search the van, the search was unconstitutional because there were no exigent circumstances. Thompson further argues that Officer Uitz conducted an unlawful seizure when he turned on his lights and sirens while traveling the wrong way on the street.

We review a trial court's denial of a suppression motion to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Mackey**, 177 A.3d 221, 226 (Pa.Super. 2017) (quoting

---

[4] This issue is a response to the appeal filed by the Commonwealth, docketed at 1929 EDA 2020, and we will address it in the memorandum filed at that docket.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)). "Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous." *Id.* (quoting *Jones*, 988 A.2d at 654). Our scope of review includes only the suppression hearing record.[5] *Id.*

Thompson challenges both his seizure and the search of the van. Because the trial court addressed the search of the van, we will address that issue first.

"The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." *Commonwealth v. Enimpah*, 106 A.3d 695, 699 (Pa. 2014). If the Commonwealth shows the defendant lacked a privacy interest in the area search, the burden shifts to the defendant to establish that he had a reasonable expectation of privacy. *Id.* at 701. "An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable." *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa.Super. 2005) (citation omitted).

In *Jones*, we found the defendant did not have a reasonable expectation of privacy in the vehicle searched where the defendant did not attempt to

---

[5] To the extent the testimony from the suppression hearing and the trial differed, we rely on the suppression hearing testimony for this issue.

explain his connection to the vehicle. We also pointed out that the operator of the vehicle was not the named lessee and was not an authorized driver, the named lessee was not present in the vehicle, the defendant offered no connection to the named lessee, and the return date for the rental car had passed. 874 A.2d at 120.

Here, the court concluded that Thompson lacked a reasonable expectation of privacy in the vehicle, reasoning that the officers found a lease agreement in the U-Haul van and the lease did not name any of the van's occupants as lessee. 1925(a) Op. at 5 (citation omitted). It found that Thompson did not present any evidence to contradict this lack of reasonable expectation of privacy and it therefore denied the motion. *Id.*

We agree with the trial court that Thompson did not have a reasonable expectation of privacy in the U-Haul van, as he was not on the lease, and he did not establish any other reason he would have an expectation of privacy. *See Jones*, 874 A.2d at 120.

We must next address whether an unconstitutional seizure occurred. If the police lacked reasonable suspicion to effectuate the stop or probable cause to detain Thompson, the items in the U-Haul van would be suppressed regardless whether Thompson had an expectation of privacy in the van. *See Commonwealth v. Shabezz*, 166 A.3d 278, 288-89 (Pa. 2017) (where an illegal seizure occurs, the defendant need not demonstrate a reasonable expectation of privacy in the area searched but rather we must determine whether the evidence obtained was the fruit of the poisonous tree). Thompson

raised the constitutionality of his detention in his motion to suppress, at the suppression hearing, and on appeal. Although the trial court did not address the issue, we find we can do so because the record contains sufficient information and the court made sufficient findings of fact for us to make the determination.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa.Super. 2017) (citing *Commonwealth v. Lyles*, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014)). The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. *Mackey*, 177 A.3d at 227  (citing *Jones*, 874 A.2d at 116)

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond, therefore need not be justified by any level of police suspicion." *Id.* (citations and internal quotations marks omitted). "In contrast, an 'investigative detention' . . . carries an official compulsion to stop and respond" and "requires reasonable suspicion of unlawful activity." *Id.* Finally, "a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." *Id.* (citation omitted). A custodial

detention requires that the police have probable cause to believe that the person so detained has committed or is committing a crime. **Id.**

Here, Thompson was seized and an investigative detention occurred when the police officers activated their lights and sirens to effectuate the stop. **See Commonwealth v. Livingstone**, 174 A.3d 609, 625 (Pa. 2017). Further, we will assume, without deciding, that when the police officers handcuffed Thompson and detained him in the police car for an hour, a custodial detention occurred. **See Commonwealth v. Teeter**, 961 A.2d 890, 899 (Pa.Super. 2008) (*en banc*) ("The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions."); **but see Commonwealth v. Guillespie**, 745 A.2d 654, 661 (Pa.Super. 2001) (use of handcuffs did not transform stop into custodial detention where other factors militated against the finding, such as the "minimal duration of detention, no transport against will, no show or threat or use of force").

We conclude the police had reasonable suspicion to support the investigative detention of Thompson. The officers responded to a police call from a verified source regarding a burglary in progress on North Marston Street, where individuals were putting items in a U-Haul van. The call was

received around 1:50 a.m., which is an unusual time to be loading a U-Haul. When the police officer arrived, he saw a parked, U-Haul van, with three males outside the house and one inside the van. The officer saw one of the men motion to the others, and they then entered the van and drove away. This provided reasonable suspicion to activate the lights and sirens. *See Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa.Super. 2005) (finding to have reasonable suspicion a policer officer may rely upon tips from citizens, and noting that where a tip is an anonymous call, it should be treated with particular suspicion, but "a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop"); *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) (anonymous tip that a person on a specific corner, described as wearing the same clothes as defendant, was carrying a gun, coupled with the fact that the defendant fled when the officer approached, constituted reasonable suspicion to stop the defendant).

The U-Haul proceeded to an empty parking lot where it was forced to stop because a fence blocked its path. Some of the individuals then exited the vehicle before stopping at the police officer's command. The totality of the circumstances, including the verified call reporting a burglary in progress, the loading of a U-Haul at 1:50 a.m., the flight when the individuals saw the officers, and the continued flight when the U-Haul stop, provided probable cause for a custodial detention. *See Commonwealth v. Brogdon*, 220 A.3d 592, 599 (Pa.Super. 2019) (probable cause exists where "criminality is on reasonable inference, not necessarily even the most reasonable inference" and

"is made out the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime"). Accordingly, the trial court did not err in denying Thompson's motion to suppress.

In his final issue, Thompson claims the court erred in denying his Rule 600 motion. He maintains that the Commonwealth brought him to trial after the adjusted run date.

We review an order denying a Rule 600 motion for an abuse of discretion. *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017). "Rule of Criminal Procedure 600 requires that '[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.'" *Id.* at 324 (quoting Pa.R.Crim.P. 600(A)(2)(a)). "[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when it has failed to exercise due diligence are to be counted in the 365–day tally." *Id.*; *see also* Pa. Rule 600 (C)(1). Further, the Rule provides that "[a]ny other periods of delay shall be excluded from the computation." *Id.* (quoting Rule 600(C)(1)) (emphasis removed). "[T]ime attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Id.* at 325. "[P]eriods of judicial delay are excludible from calculations under the rule." *Id.* "Failure to meet the rule's prompt-trial requirement constitutes grounds for dismissal." *Id.*

- 12 -

When addressing an appeal from an order dismissing a Rule 600 motion we must first determine the mechanical and adjusted run dates:

> The mechanical run date is the date by which the trial must commence under [Rule 600]. It is calculated by adding 365 days (the time for commencing trial under [Rule 600] ) to the date on which the criminal complaint is filed. As discussed herein, the mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

***Commonwealth v. Ramos***, 936 A.2d 1097, 1102 (Pa.Super. 2007) (*en banc*) (citation omitted).

The Commonwealth filed its Complaint against Thompson on June 8, 2018. The mechanical run date was June 8, 2019. Thompson concedes 130 days of excludable time. Thompson's Br. at 13; Motion to Dismiss, filed Oct. 22, 2019, at ¶¶ 6, 11 (conceding 84 days and 46 days excludable time). That brings the adjusted run date to October 16, 2019.[6] Trial occurred on November 1, 2019. We must therefore determine whether any of the disputed time frames are excludable.

The case was set for trial on September 27, 2019. Thompson and the Commonwealth were prepared for trial, but the co-defendant's counsel was unavailable and requested a continuance, which the court granted. The

---

[6] Thompson maintains that the mechanical run date was June 8, 2019, and with the 130 days of excludable time, the adjusted run date was October 10, 2019. ***See*** Thompson's Br. at 13. However, with 130 days of excludable time, the adjusted run date is October 16, 2019.

- 13 -

Commonwealth declined to sever the cases. In his Rule 600 motion, Thompson argued the time following the grant of Purnell's continuance request was not excludable time, reasoning that the Commonwealth should have severed Thompson's case from Purnell's case. The Commonwealth argues it was not required to sever the cases. This continuance was for 21 days, from September 27 to October 18, 2019. If this time was excludable, the adjusted run date would be November 6, 2019, and the court would not have abused its discretion in denying the motion to dismiss.

The trial court found this 21-day period was excludable, as Purnell's counsel was unavailable. It cited **Commonwealth v. Robbins**, 900 A.2d 416, 417 (Pa.Super. 2006), where we concluded that the Commonwealth is not required to sever cases where it faces a possible Rule 600 violation and that the court erred when it factored the refusal to sever into its Rule 600 violation.

We conclude the trial court did not abuse its discretion in finding the time following Thompson's co-defendant's continuance request was excludable, as the Commonwealth was not required to sever the cases for Rule 600 purposes. **See Robbins**, 900 A.2d at 417; **Commonwealth v. Kearse**, 890 A.2d 388, 394-95 (Pa.Super. 2005) (finding the Commonwealth acted with due diligence, where it would not sever the defendant's case, because the Commonwealth was present and ready to proceed on the five preliminary hearing dates which required a continuance due to co-defendant's counsel). Accordingly, it did not abuse its discretion in denying the Rule 600 motion.

- 14 -

Judgment of sentence affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date: 5/19/2022*