J-S36027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TELFORD EDWARD BAKER | : | |
| | : | |
| Appellant | : | No. 521 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 6, 2022
In the Court of Common Pleas of Somerset County
Criminal Division at No(s):  CP-56-CR-0000494-2021

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED: MAY 18, 2023**

Appellant, Telford Edward Baker, appeals from the judgment of sentence entered in the Somerset County Court of Common Pleas, following his jury trial convictions for aggravated assault, simple assault, recklessly endangering another person ("REAP"), terroristic threats, and sixteen counts of witness intimidation.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with various offenses in relation to a domestic incident involving his then fiancé, Samantha Johnson ("Victim").  A jury trial commenced on October 14, 2021.  Victim testified that on June 8,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 2701(a), 2705, 2706(a), and 4952(a), respectively.

2021, she returned to the residence that she shared with Appellant and Appellant became upset with her regarding a sandwich that she bought him for dinner. Appellant began to berate Victim and call her names. Appellant proceeded to throw several objects at Victim, including the sandwich, a fan, and a gun scope. Some of the objects struck Victim, resulting in bruises to her arms and legs. Victim further testified that she walked away from Appellant and began doing the dishes. Appellant walked over to her and told her that she needed to leave. Appellant then wrapped both arms around Victim's neck and squeezed so hard that she felt like she was going to pass out. Appellant stated that he was going to kill Victim and that she needed to get out. At this point, Victim grabbed two kitchen knives for protection and Appellant grabbed a spray bottle of insect killer. Appellant sprayed the insect killer at Victim's face and knocked one knife out of her hand. Appellant then left the residence for approximately an hour.

When Appellant returned, Victim was preparing to go to sleep on the couch and had hidden a knife under her pillow. Appellant berated Victim again and repeated that he would kill her, and she needed to leave. Appellant had Victim's hunting rifle in his hand, and Victim retrieved the knife from beneath her pillow. Appellant took Victim's phone and walked into another room. When Victim went to retrieve her phone, she saw Appellant hitting the screen of her phone repeatedly with the rifle. When she asked Appellant for the phone, Appellant raised the rifle up to her head, pulled it back and struck her

in the face with it. Victim testified that blood immediately started pouring out of her nose and she felt like she might faint. Victim then left the residence and called 911.

Victim did not wait for the police to arrive and drove herself to the hospital. Victim received treatment for a broken nose, cuts and bruises on her body and face, and a concussion. Victim stated that following this incident, she continues to suffer from migraines and is sensitive to light and screens. After Appellant was arrested, he continued to regularly call Victim while he was incarcerated. During these phone calls, Appellant would try to persuade Victim to drop the charges. Victim testified that Appellant asked her over 15 or 16 times to drop the charges and/or not testify against him.

During cross-examination, Victim acknowledged that she stated on the 911 call that she believed Appellant would tell the police that she stabbed him. Victim further stated that when Victim approached Appellant to retrieve her phone, Appellant stated out loud that she stabbed him. Nevertheless, Victim testified that she did not stab Appellant at any point during the night. After this line of questioning, the following exchange took place:

> [Appellant's Counsel]: And then you ultimately encountered the police at the hospital, is that right?
>
> [Victim]: Yes.
>
> [Appellant's Counsel]: Did you tell them about the knife?
>
> [Victim]: Yes.
>
> [Appellant's Counsel]: At this point, are you concerned

about being in trouble?

[Victim]: No, because I grabbed the knife in self-defense because [Appellant] has done physical harm to me before.

(N.T. Trial, 10/15/21, at 2.99).

Appellant's counsel objected to Victim's answer on the grounds that Victim was testifying to prior bad acts prohibited by Pa.R.E. 404(b). The trial court overruled the objection, noting that defense counsel opened the door to the information by questioning Victim on why she was not concerned about telling the police about the knife and raising the issue of self-defense. During re-direct examination, Victim further explained that she hid the knife under her pillow that night because she was scared that Appellant would hurt her based on her prior experiences. Victim testified to two prior incidents where an argument with Appellant turned physical and Appellant broke Victim's nose.

State trooper, David Waldschmidt, testified that he responded to Victim's 911 call on the night in question. When he arrived at Appellant and Victim's residence, he noted that the front door was partially open and there were droplets of blood on the front porch steps. When he entered, Trooper Waldschmidt did not find anyone inside the residence. He noted that there were objects scattered all around the house as if a physical altercation had taken place. Additionally, there was a trail of blood from the bedroom, through the living room, and out the front door.

Trooper Waldschmidt also testified that he listened to all the audio recordings of Appellant's calls to Victim while he was incarcerated. Trooper

Waldschmidt stated that there were numerous occasions where Appellant begged for Victim to drop the charges. Appellant's tone in speaking to Victim during these exchanges varied from angry and forceful to apologetic and pleading. On one occasion, Appellant threated to self-harm if Victim proceeded with the charges. On other occasions, Appellant told Victim that she could use his debit card to pay her bills and stated that they could go on a vacation together if he got out of prison. The Commonwealth submitted transcripts of relevant portions of these phone conversations into evidence.

Jo Ellen Bowman was qualified as an expert in intimate partner violence for the purpose of testifying to the dynamics of domestic violence in relationships and victim behavior. Ms. Bowman testified that she had not spoken with Victim or Appellant, had not reviewed their file, and did not know any information about Appellant and/or Victim other than the allegations in the instant case. Ms. Bowman educated the jury on general information about domestic violence between intimate partners and explained why some victims of domestic violence choose to maintain contact with their abuser after an incident of abuse. During cross-examination, Ms. Bowman reiterated that she did not know any information as it pertains specifically to Appellant and Victim and acknowledged that men can also be victims of domestic abuse.

At the conclusion of the evidence, the jury found Appellant guilty of simple assault, aggravated assault, terroristic threats, REAP, and 16 counts of witness intimidation. On January 6, 2022, the court sentenced Appellant to

an aggregate of seven to fifteen years of incarceration. Appellant filed a timely post-sentence motion on January 11, 2022. On April 19, 2022, the court partially granted Appellant's post-sentence motion and modified the grading of 14 of the 16 witness intimidation convictions from third-degree felony convictions to second-degree misdemeanor convictions.[2] The court denied the remainder of Appellant's post-sentence motion. As the grading modification did not impact the court's overall sentencing scheme, the court did not resentence Appellant. Appellant filed a timely notice of appeal on April 29, 2022. On June 1, 2022, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on June 10, 2022.

Appellant raises the following issues for our review:

> 1. Whether the trial court erred in denying Appellant's Motion *In Limine* and Post-Sentence Motion relative to permitting [a] domestic violence expert that had no independent knowledge of the facts of this case despite its inherently prejudicial nature?
>
> 2. Whether the trial court erred in denying Appellant's post-sentence motion relative to permitting [Pa.R.E.] 404(b) evidence during trial despite there being no invocation of a permissible use?
>
> 3. Whether the trial court erred in denying Appellant's Post-Sentence Motion when it decided that the evidence satisfied the sufficiency of the evidence standard for all charges where there was a conviction?

---

[2] The court found that there was sufficient evidence for two of the witness intimidation convictions to remain graded as third-degree felonies.

4. Whether the trial court erred in denying Appellant's Post-Sentence Motion when it decided that the evidence was not against the weight of the evidence for all charges where there was a conviction?

5. Whether the trial court abused its discretion in denying Appellant's Post-Sentence Motion by sentencing [Appellant] consecutively on the charges, and necessarily considering the [Pa.R.E.] 404(b) evidence?

(Appellant's Brief at 6-7) (reordered for purposes of disposition).

Appellant's first two issues concern the admissibility of evidence. This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court ... [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

Appellant's third and fourth issues raise challenges to the sufficiency and weight of the Commonwealth's evidence. Appellate review of a challenge to the sufficiency of the evidence is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the

- 7 -

evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Additionally:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Appellant's fifth issue implicates the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue we conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005) (internal citations omitted).

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

Instantly, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned order and opinion of the Honorable D. Gregory Geary, we conclude Appellant's claims merit no relief. The trial court's April 19, 2022 order, and July 11, 2022 Rule 1925(a) opinion, comprehensively discuss and properly dispose of the issues raised on appeal. (*See* Order, filed 4/19/22, at 1-4; Trial Court Opinion, filed 7/11/22, at 2-29).

Specifically, regarding Appellant's first issue, he argues that the trial court erred by denying Appellant's motion *in limine* to preclude Ms. Bowman's testimony based on the Commonwealth's late disclosure of Ms. Bowman as an expert witness. Nevertheless, the court found that Appellant was not prejudiced by the late disclosure because the Commonwealth did not intentionally withhold the information and disclosed Ms. Bowman's name to defense counsel as soon as she agreed to testify. Additionally, defense counsel represented to the court that she would be prepared to cross-examine Ms. Bowman and did not request a continuance when the court offered both parties additional time to prepare their cases. The court also found no merit to Appellant's claim that Ms. Bowman's testimony was unduly prejudicial because her testimony provided relevant information to the jury about the dynamics of domestic violence, victim responses thereto, and the impact of domestic violence on victims after being assaulted. Additionally, Ms. Bowman made clear to the jury that she did not know any information about the history and dynamics of Appellant's relationship with Victim, thereby minimizing the

risk of any potential prejudicial inferences the jury might draw from her testimony. (*See* Trial Court Opinion at 2-9). We discern no error in the court's evidentiary rulings, and Appellant's first issue on appeal fails. *See Belkap, supra*.

With respect to his second issue, Appellant claims that the trial court erred in admitting irrelevant and highly prejudicial testimony about prior instances of violence between Appellant and Victim. Nevertheless, the court noted that Appellant's counsel opened the door to the testimony by questioning Victim about her statements to law enforcement about the knife that she had during the altercation and raising the issue of whether Victim was the initial aggressor. Additionally, the risk of prejudice was mitigated by the court's clear instruction to the jury that they could not use the testimony as evidence of Appellant's propensity to act violently but only for the limited purpose of evaluating why Victim had a knife on the night in question. (*See* Trial Court Opinion at 9-13). We discern no abuse of discretion in the court's evidentiary ruling. *See Belkap, supra*.

Regarding Appellant's third issue challenging the sufficiency of the evidence, the court found that the Commonwealth presented sufficient evidence for the jury to find that Appellant acted with the specific intent to inflict serious bodily injury required for Appellant's aggravated assault conviction. Specifically, Victim testified that Appellant repeatedly stated that he was going to kill Victim, threw various objects at her, sprayed insect killer

at her face, squeezed her neck so tight that she could hardly breathe, and struck her in the face with a rifle with enough force to cause a broken nose and a concussion. The court further explained that this evidence was sufficient for the jury to find that Appellant intentionally, knowingly or recklessly caused bodily injury to Victim to sustain his simple assault conviction. The jury was free to believe Victim's version of events and could reasonably conclude from her testimony that the incident was not a "fight or scuffle entered into by mutual consent."

Regarding his terroristic threats conviction, the court found that Appellant's threats to kill Victim were preceded and followed by acts of physical violence against Victim, providing a sufficient basis for the jury to infer that Appellant threatened Victim with the intent to terrorize her. Regarding Appellant's REAP conviction, the court found that Appellant's actions in striking her in the face with a hunting rifle with such force as to cause a broken nose and a concussion was sufficient for the jury to find that Appellant placed Victim in risk of serious, permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ.

Regarding the witness intimidation convictions, the court found that Victim's testimony that Appellant asked her to drop the charges over 15 or 16 times was sufficient evidence to sustain Appellant's 14 counts of witness intimidation charges, graded as second-degree misdemeanors. Additionally, the transcripts of the phone calls submitted by the Commonwealth show that

on one occasion, Appellant offered Victim money from his wallet and the use of his debit card, and on another occasion, Appellant told Victim to pack her bags to go on vacation as soon as he gets out prison. Taken together with Appellant's pleas and demands for Victim to drop the charges in the same conversations, the court determined that there was sufficient evidence for the jury to find that Appellant offered Victim a pecuniary or other benefit to sustain two convictions of witness intimidation graded as third-degree felonies. (*See* Trial Court Opinion at 16-26); (Order at 1-4). Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that there was sufficient evidence to sustain all of Appellant's convictions. *See Jones, supra*.

With respect to Appellant's fourth issue, Appellant does not attack the credibility of any of the Commonwealth's witnesses or raise any issue with the jury's resolution of any inconsistencies in the testimony or evidence presented. Rather, Appellant merely reiterated his arguments about the sufficiency of the evidence. (*See* Trial Court Opinion at 26-29). Thus, we agree with the trial court that Appellant failed to establish that the jury's verdict was against the weight of the evidence. *See Champney, supra*.

With respect to Appellant's final issue, Appellant timely filed a notice of appeal, and preserved his sentencing issue in a timely filed post-sentence motion and in a Rule 2119(f) statement. Further, Appellant's claim that the court imposed an excessive sentence as a result of reliance on an

impermissible factor raises a substantial question. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011) (holding that substantial question is raised when appellant alleges that his sentence is excessive because of trial court's reliance on impermissible factors). Nevertheless, we agree with the trial court that there is no merit to Appellant's claim. The court sentenced Appellant to an aggregate sentence of seven to fifteen years of incarceration, which falls within the standard range of the sentencing guidelines. The court stated on the record that it fashioned the sentence based on the serious and violent nature of Appellant's conduct and Appellant's apparent lack of remorse. The court further noted that any lesser sentence would have depreciated the seriousness of the offenses. The court made clear that it did not consider impermissible factors such as Appellant's prior bad acts in sentencing but based its decision solely on Appellant's conduct relative to the convictions at issue here. The court imposed only two of Appellant's sentences consecutively, and imposed no further penalty on numerous other counts for which Appellant was convicted. (*See* Trial Court Opinion at 13-15). We discern no abuse of discretion in the court's sentence. *See McNabb, supra*.

Accordingly, we agree with the trial court that all of Appellant's issues on appeal are without merit and we affirm the judgment of sentence on the basis of the trial court's order and opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/18/2023</u>